# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                No. CR 08-2447 JB

EDUARDO RODRIGUEZ-LOPEZ,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Letter from Marty C. Anderson, Warden, United States Medical Center Federal Prison Springfield to the Court (dated June 30, 2010), filed July 14, 2010 (Doc. 84)("Warden Anderson's Letter").  The Court held an evidentiary hearing on September 16, 2010.  The primary issue is whether there is a substantial probability that Defendant Eduardo Rodriguez-Lopez will become competent to stand trial in a reasonable period of time if he is sent back for additional treatment at the Federal Medical Center in Springfield, Illinois ("FMC").  Because the Court believes that the Bureau of Prisons ("BOP") has had an additional reasonable period of time to treat Rodriguez-Lopez, and because the United States has failed to show that there is a substantial probability that he will become competent in a reasonable time, the Court will deny the United States' request.

## FACTUAL BACKGROUND

Rodriguez-Lopez is a forty-nine-year-old Hispanic male.  He has been deported from the United States on several occasions, with the most recent deportation occurring on April 23, 2008.  See Criminal Complaint at 1, filed July 17, 2008 (Doc. 1).  On July 15, 2008, United States Border

Patrol agents picked up Rodriguez-Lopez near Columbus, New Mexico.  See Criminal Complaint at 1.  At the time that the Border Patrol picked him up, Rodriguez-Lopez admitted that he was a citizen of the Republic of Mexico and had illegally entered the United States.  He further admitted that he did not have any immigration documents which would allow him to remain legally.  See Criminal Complaint at 1.  Rodriguez-Lopez contends that he did not want to come back to the United States, but rather, he needed to return to correct a mistake on his criminal record.  See Forensic Neurophsychological Evaluation - Competency to Stand Trial at 11 (dated November 28, 2008), filed January 22, 2009 (Doc. 31)("Forensic Eval.").  Rodriguez-Lopez asserts that he approached the United States-Mexico border and spoke directly to a Border Patrol official, asking to be taken to the jail in Estancia, New Mexico.  The official refused to take him to Estancia, so Rodriguez-Lopez crossed the border, knowing that he would then be arrested and brought before a judge.  Rodriguez-Lopez apparently believed that this action would give him access to a judge and that the judge could then help him fix the incorrect data on his criminal record.  See Forensic Eval. at 11.[1]

## PROCEDURAL BACKGROUND

On July 17, 2008, the United States filed a criminal complaint charging Rodriguez-Lopez with illegally entering the United States after deportation in violation of 8 U.S.C. § 1326(a)(1), (a)(2), and (b)(2).  See Criminal Complaint at 1.  Rodriguez-Lopez faces a maximum prison term of ten years.  See 8 U.S.C. § 1326(b)(1).

---

[1] From other materials in the record, it appears that Rodriguez-Lopez came to see Judge Browning, who had sentenced him in 2008.  See, e.g., Transcript of Hearing at 8:17-19 (taken November 20, 2009)(Converse)(telling the Court that "[Rodriguez-Lopez] c[a]me to the border, wait[ed] patiently until another Border Patrol man came, flagged down the Border Patrol man, and asked to be brought to you").

On September 24, 2008, Kari Converse, counsel for Rodriguez-Lopez, filed an unopposed motion for a hearing to determine Rodriguez-Lopez' competency to stand trial, see Unopposed Motion to Determine Mental Competency, filed September 24, 2008 (Doc. 11), which the Court granted on October 1, 2008, see Order for Evaluation of Mental Competency, filed October 10, 2008 (Doc. 13).   On November 28, 2008, Dr. Maxann Shwartz, a Licensed Forensic and Neuropsychologist, and Dr. Alexander Paret, a Postdoctoral Bi-Lingual Clinical and Forensic Psychologist, completed a psychological report regarding Rodriguez-Lopez.  The doctors found that Rodriguez-Lopez suffers from a mental disease or defect -- specifically, paranoid-type schizophrenia -- which renders him incompetent to stand trial.  See Forensic Eval. at 2, 13-14.

The Court held a competency hearing on January 21, 2009.  The following day, on January 22, 2009, the Court entered an order granting the United States' oral motion to commit Rodriguez-Lopez to the United States Attorney General's custody for psychiatric treatment.  See Order, filed January 22, 2009 (Doc. 20).  On April 13, 2009, the BOP submitted to the Court an update on the status of Rodriguez-Lopez, written by Dr. Christina Pietz, in which Dr. Pietz found that Rodriguez-Lopez was not competent to proceed to trial because he did not have a rational understanding of the charges against him and because his psychosis rendered him unwilling to cooperate in mental health treatment.  See Forensic Update at 2 (dated April 13, 2009)("Pietz' Update").

Dr. Pietz further recommended that the Court hold a Sells[2] hearing to determine whether

---

[2] Sells v. United States, 539 U.S. 166 (2003).  In Sells v. United States, the Supreme Court of the United States established four factors courts must consider when determining whether to forcibly medicate a defendant to render the defendant competent to stand trial:

First, [the] court must find that important governmental interests are at stake. . . .  Second, the court must conclude that involuntary medication will significantly further those concomitant state interests. . . .  Third, the court must conclude that involuntary medication is necessary to further those interests. . . . [And

Rodriguez-Lopez meets the criteria for involuntary medication. See Pietz' Update at 2. Dr. Pietz found that Rodriguez-Lopez suffers from schizophrenia, and presented significant psychotic symptoms, such as paranoia, grandoisity, and delusional ideation. See Pietz' Update at 3. Dr. Pietz asserted that Rodriguez-Lopez' psychotic symptoms were chronic and unlikely to improve in the foreseeable future without antipsychotic medication, and, because he refused to take medication voluntarily, less intrusive treatments were unlikely to achieve substantially the same result as involuntary administration of antipsychotic medications. See Pietz' Update at 4.

On March 30, 2009, Dr. Robert G. Sarrazin, Ph.D, reviewed with Rodriguez-Lopez antipsychotic medications to treat his schizophrenia, but Rodriguez-Lopez refused treatment, stating that he would not take any antipsychotic medications. See Sarrazin's Report at 3. Dr. Sarrazin, like Dr. Pietz, diagnosed Rodriguez-Lopez with paranoid-type schizophrenia, including a history of greater than six months of delusions, hallucinations, and disorganized speech. See Sarrazin's Report at 3. Schizophrenia is a chronic illness with periods of exacerbation and remission. See Sarrazin's Report at 5. Although Rodriguez-Lopez had no history of treatment with antipsychotic medications, Dr. Sarrazin predicted that there was a seventy-five to eighty-seven percent likelihood that, after treatment with antipsychotic medication, Rodriguez-Lopez would be rendered competent to stand trial. See Sarrazin's Report at 11. Dr. Sarrazin asserted that "involuntary treatment of Rodriguez-Lopez with antipsychotic medication will [be] substantially likely [to] render him competent to stand trial and [be] substantially unlikely to have side effects that will interfere with his ability to assist

---

f]ourth, . . . the court must conclude that administration of the drugs is medically appropriate, i.e., in the patient's best interest in light of his medical condition.

United States v. Valenzuela-Puentes, 479 F.3d 1220, 1223-24 (10th Cir. 2007)(quoting Sells v. United States, 539 U.S. at 180-81)(emphasis and alterations in original).

counsel in conducting a defense."  Sarrazin's Report at 11.

On May 25, 2009, the United States moved the Court to order that Rodriguez-Lopez be involuntarily medicated with antipsychotic drugs for a period of not less than four months in an effort to restore Rodriguez-Lopez to competency.  See United States' Sealed Motion to Forcibly Medicate the Defendant to Competency at 1, 6, filed May 25, 2009 (Doc. 57).  On December 14, 2010, the Court ordered that Rodriguez-Lopez may be forcibly treated with antipsychotic medications and that the Attorney General shall hospitalize the defendant for treatment in a suitable facility for a period not to exceed 120 days as authorized under 18 U.S.C. § 4241(d)(1).  See Sealed Memorandum Opinion and Order, filed December 14, 2010 (Doc. 74).  Rodriguez-Lopez was admitted to the FMC on February 17, 2010.  The purpose of Rodriguez-Lopez' commitment was hospitalization for mental-health treatment to be restored to competency.

On June 30, 2010, Warden Marty C. Anderson of the FMC requested that the Court extend Rodriguez-Lopez' commitment.  Warden Anderson's Letter at 1.  The warden's letter included a report from Dr. Pietz stating that:

> Mr. Rodriguez-Lopez exhibits psychotic symptoms including delusional beliefs that are grandiose in nature.  Delusional beliefs are entrenched beliefs which have no basis in reality.  He frequently presents as grandiose and paranoid, and when questioned about various issues, he struggles to provide appropriate responses.  His thoughts are typically disorganized and loose.  It is difficult to maintain a lengthy, meaningful conversation with him.  Although he denies attending to auditory hallucinations, he has been observed on several occasions attending to auditory hallucinations.  He presents as easily agitated.  As noted in my report dated April 27, 2009, Mr. Rodriguez-Lopez was previously assigned a diagnosis of paranoid schizophrenia.
>
> Initially, Mr. Rodriguez-Lopez was referred to this facility on February 10, 2009.  However, he refused to consider taking medication for his mental illness.  Thus, I notified the Court that Mr. Rodriguez-Lopez did not believe he was mentally ill and refused to consider taking medication and that involuntary administration of anti-psychotic medication needed to be addressed by the Court according to the United States Supreme Court's ruling in Sell v. United States.  The court ruled that

Mr. Rodriguez-Lopez could be involuntarily medicated.  Thus, he was returned to this facility and arrived on February 17, 2010.  Although reluctant, he did agree to take medication only because it was court ordered.

Although Mr. Rodriguez-Lopez has made some improvements, he has not reached competency to stand trial.  Hence, an extension to his period of commitment is requested.

Exhibit to Letter to Counsel from District Judge James O. Browning as to Eduardo Rodriguez-Lopez, Brief Treatment Summary Request for Extension of Commitment at 1-2 (dated June 22, 2010), filed July 14, 2010 (Doc. 84)("Treatment Summary").

At the end of June, 2010, Dr. Pietz contemplated requesting that Rodriguez-Lopez be treated for an additional four months, possibly followed by a request for another extension if Rodriguez-Lopez made progress toward regaining competency.  See Transcript of Hearing at 16:3-13 (taken September 16, 2010)("Tr.")(Court, Pietz).[3]  Rodriguez-Lopez left the FMC on September 2, 2010, to return to New Mexico for a hearing on the BOP's request for an extension of his detention for additional treatment.  Rodriguez-Lopez was treated at the FMC from February 17, 2010, until September 2, 2010, a period of approximately six-and-one-half months.[4]

## RELEVANT LAW REGARDING ADDITIONAL TIME
## TO COMPLETE MENTAL HEALTH TREATMENT

The United States Court of Appeals for the Tenth Circuit has explained that courts determine whether a defendant is competent to stand trial in three stages:

Determining whether an accused is competent to stand trial is a three step process. See generally United States v. Deters, 143 F.3d 577, 579-80 (10th Cir.1998)

---

[3] The Court's citations to the transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

[4] At the hearing on September 16, 2010, some references were made to this period of time as measuring seven-and-one-half months.  For purposes of clarity, the Court will use the correct measure.

(reviewing the process).  First, if there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent," the court may order a psychiatric or psychological examination of the defendant.  18 U.S.C. § 4241(a).  At the second stage, the court uses the psychological report and conducts a hearing to determine whether the defendant is competent.  If the defendant is not found to be competent, the court must order the defendant hospitalized for up to four months to determine whether the defendant will become competent in the foreseeable future.  The court may order additional hospitalization if it finds there is a substantial probability that within the additional time, the defendant will become competent.  See id. § 4241(d).  At the third stage, after the specified period of confinement has expired, the court determines whether the defendant is competent and thus ready to stand trial.  If still found not to be competent, the defendant must be released unless the court finds that he presents a substantial risk of harm to others.  See id. §§ 4241(d), 4246; United States v. Steil, 916 F.2d 485, 486-87 (8th Cir.1990).

United States v. Boigegrain, 155 F.3d 1181, 1184 n.1 (10th Cir. 1998).  Rodriguez-Lopez is currently in the second stage, where, in accordance with 18 U.S.C. § 4241(d)(2)(A), the Court may grant "an additional reasonable period of time" to complete the mental health treatment "if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward."  18 U.S.C. § 4241(d)(2)(A).

## ANALYSIS

The FMC sent a letter to the Court requesting an additional reasonable period of time to treat Rodriguez-Lopez, asserting that there is a substantial probability that he will become competent for his trial to proceed.  See Warden Anderson's Letter at 1.  The United States agrees with this request. See Tr. at 2:24-3:8 (Court, McCulloch).  At the hearing on September 16, 2010, Dr. Pietz and Dr. Sarrazin, Rodriguez-Lopez' treating physicians, testified that, at the FMC, Rodriguez-Lopez has been diagnosed with paranoid schizophrenia and has been receiving 200 milligrams a day of the antipsychotic medication Geodon.  See id. at 4:20-5:6, 5:13-17 (McCulloch, Pietz); id. at 21:17-19, 22:2-4 (McCulloch, Sarrazin).

The medication has produced only minimal changes in Rodriguez-Lopez' psychotic thinking.

-7-

See id. at 6:15-18 (McCulloch, Pietz).  Rodriguez-Lopez continues to demonstrate delusional thought patterns.  He entered the country under angelic commands and believes that he is prosecuting a complaint against the border patrol.  See id. 6:22-7:8 (Pietz, Converse).  Rodriguez-Lopez believes the Border Patrol entered false information in his criminal record and that angels ordered him to return to correct the error.  See id. 13:6-10 (Pietz, Converse).  He refuses to talk to his attorney, whom he believes is corrupt and misunderstands his case.  See id. 11:16-12:14 (Pietz, Converse).  Two months into his treatment, Rodriguez-Lopez sent a letter to the Court asserting that Dr. Sarrazin agrees with him that Rodriguez-Lopez' case is political and not mental, but that the Court wants Rodriguez-Lopez to take his medication, assertions with which Dr. Sarrazin does not agree.  See id. at 27:25-29:6 (Converse, Sarrazin).  Rodriguez-Lopez also believes that Judge Browning has god-like powers.  See id. 12:18-13:5 (Pietz, Converse).  There is ample evidence in the record that Rodriguez-Lopez continues to suffer from delusions despite hospitalization and treatment at the FMC.  If Rodriguez-Lopez is returned to the FMC, his doctors would either change or supplement Rodriguez-Lopez' medication, or change the method of administration.  See id. at 6:19-21, 7:18-22 (Pietz); id. at 21:17-15 (McCulloch, Sarrazin).

While Dr. Pietz reported on June 22, 2010, that she believes that an additional period of time will allow Rodriguez-Lopez to improve and reach competency to stand trial, see Treatment Summary at 2,  at the hearing on September 16, 2010, Dr. Pietz stated that she did not have a medical opinion whether there is a substantial probability that Rodriguez-Lopez would return to competency if he was returned to the FMC or how long it might take if he did, see Tr. at 6:22-7:8 (McCulloch, Pietz).  Dr. Pietz stated that Rodriguez-Lopez is "just not getting better," and "on [his] current medication regimen . . . there is not a substantial probability" that he will regain competency such that a trial may proceed.  id. at 17:22-18:6 (Court, Pietz).

-8-

Dr. Pietz asserted that modifying Rodriguez-Lopez' medication would increase the probability of restoring him to competency; however, she also acknowledged that Rodriguez-Lopez has not responded to medication despite taking close the maximum dosage, which decreases the probability that he would return to competency.  See id. 18:7-15, 20:5-8 (Court, Pietz).  Dr. Pietz explained that Rodriguez-Lopez' medication were not previously augmented with another antipsychotic drug, because his treating physicians must slowly increase his medication towards the maximum dosage, and for each increase the doctors must wait to see if Rodriguez-Lopez responds, which can take several months.  See id. at 18:16-19:19 (Court, Pietz).  She speculated that Rodriguez-Lopez may not be swallowing his medication and that injecting his medication may prove effective. See id. at 7:13-17 19:3-10 (Pietz).  Dr. Pietz further noted that, while there is a high success rate of treating paranoid schizophrenia with psychotropic drugs, Rodriguez-Lopez has been a "difficult case and he just has been very slow to respond to the medication and [his doctors] don't have an explanation for that."  Id. at 7:6-11, 7:23-8:1 (McCulloch, Pietz).

Dr. Sarrazin asserts that an additional reasonable period of time will allow Rodriguez-Lopez to improve and reach competency to stand trial.  See id. at 22:16-23:1 (McCulloch, Sarrazin).  Rodriguez-Lopez was started on a low dosage of Geodon, which was gradually increased to maximum dosage.  See id. at 30:3-11 (Court, Sarrazin).  Rodriguez-Lopez had been taking his current dosage of Geodon for approximately four months at the time of the September 16, 2010 hearing, and Dr. Sarrazin asserted that it is not uncommon for a patient to take longer to fully respond to the medication.  See id. at 23:2-10 (McCulloch, Sarrazin).  Based on his experience with other patients treated pursuant to Sell hearings,  Dr. Sarrazin expects that it would take a total of at least eight months -- or an additional four months -- for Rodriguez-Lopez to reach competency.  See id. at 23:16-25, 33:17-34:22 (McCulloch, Sarrazin).  Dr. Sarrazin asserted that most patients with

paranoid schizophrenia eventually respond to psychotropic drugs, although some individuals with severe schizophrenia or other psychotic disorders do not respond.  See id. at 22:5-15 (McCulloch, Sarrazin).  Dr. Sarrazin agreed that, after six-and-a-half-months of treatment, Rodriguez-Lopez demonstrates at best limited improvement.  See id. at 27:3-5 (Converse, Sarrazin), 31:13-17 (Court, Sarrazin).

Dr. Sarrazin testified that he is uncertain if Rodriguez-Lopez had remained under treatment at the FMC in August of 2010 whether there was a substantial probability that Rodriguez-Lopez would have been restored to competency within two months from that time, but he asserts that there was a substantial probability that Rodriguez-Lopez could have been restored to competency in four months.  See id. at 32:7-33:1 (Court, Sarrazin).  Dr. Sarrazin asserted that, at the time of the June 22, 2010 Treatment Summary, he would have requested to treat Rodriguez-Lopez for an additional three-to-four months.  See Tr. at 29:16-30:2 (Court, Sarrazin).  Dr. Sarrazon is of the opinion that if Rodriguez-Lopez is returned to the FMC, there is a substantial probability that he could be restored to competency in a four-month period.  See id. at 33:2-6 (Court, Sarrazin).  Although Rodriguez-Lopez may not have continued to take his medication after he left the FMC, Dr. Sarrazin stated that gap would not affect his doctors' ability to get him back on his medication and proceed with altering his regimen.  See id. at 34:23-35:11 ((McCulloch, Sarrazin).  If Rodriguez-Lopez was returned to the FMC for treatment, Dr. Sarrazin would likely add an additional antipsychotic medication to Rodriguez-Lopez' regimen.  See id. at 23:12-15, 30:6-20 (Sarrazin).

The United States, acknowledging that both Dr. Pietz and Dr. Sarrazin agree that Rodriguez-Lopez has not responded to treatment and is not competent to stand trial, argues that Rodriguez-Lopez should be returned to the FMC for further treatment, because Dr. Pietz and Dr. Sarrazin have explained the delay involved in initially treating patients with paranoid schizophrenia with a low

dose of medication and then slowly increasing the dosage, and the doctors have explained their treatment plan for Rodriguez-Lopez if he is returned to the FMC.  See id. 36:1-10 (McCulloch).  The United States further argues that both Dr. Pietz and Dr. Sarrazin stated that there is a substantial probability that Rodriguez-Lopez can be treated to competency in a reasonable period of time.  See id. 36:3-5 (McCulloch).

Rodriguez-Lopez argues that his treatment at the FMC has been ineffective and that the United States has not established that there is a substantial probability that he will be returned to competency within a reasonable period of time if he is returned to the FMC for further treatment.  Rodriguez-Lopez asserts that, after six-and-one-half months, he has not responded to medication.  He further points out that Dr. Pietz did not say that there is a substantial probability that he could be treated to competency; rather, she refused to give such a prognosis, and testified that he is not improving and that there is not a substantial probability he will improve on the current regimen.  See id. at 36:14-20 (Converse).  Rodriguez-Lopez dismisses Dr. Sarrazin's testimony that a substantial probability exists as a "party line," because he has not changed his opinion since April of 2009, despite Rodriguez-Lopez' continuing to demonstrate delusional thought processes and failing to respond to treatment in six-and-one-half months.  Id. at 36:23-37:11 (Converse).  Rodriguez-Lopez further asserts that he has suffered from delusional thoughts since at least 2006 and that Dr. Pietz testified that psychotic delusions which persist for a long period are less likely to respond to medication.  See id. at 37:25-38:3 (Converse).  Rodriguez-Lopez argues that the doctors provide no reason to expect that trying a different approach will be effective, and provide evidence only that what they have tried has failed.  Rodriguez-Lopez contests that the doctors now would try something different that might work -- but "might work" falls short of the substantial probability that 18 U.S.C. § 4241(d)(2)(A) requires.  Tr. at 37:12-24 (Converse).

The Court finds that the United States has not established, by a preponderance of the evidence,[5] that there is a substantial probability that Rodriguez-Lopez can be restored to competency in a reasonable period of time.  The BOP has had six-and-one-half months to treat Rodriguez-Lopez. He has not responded to treatment, and his likelihood of recovering competency is uncertain.  The United States' request for another four months is not legally reasonable.

There is not a substantial probability that Rodriguez-Lopez could be returned to competency, in a legally reasonable time or otherwise.  Dr. Pietz and Dr. Sarrazin disagree on Rodriguez-Lopez' prognosis.  Dr. Pietz states that she is not of the medical opinion that there is a substantial probability that Rodriguez-Lopez would return to competency if he is sent back to the FMC or how

---

[5] 18 U.S.C. § 4241 does not expressly provide a burden of proof by which the Court must determine whether "there is a substantial probability that within such additional period of time [the defendant] will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(2)(A).  At least one other court has applied a preponderance of the evidence standard. See United States v. Rivera, No. 90-CR-1001-1, 1995 WL 20452 (N.D. Ill. Jan 12, 1995)("On August 30, 1991, the court found that by the preponderance of the evidence there was a substantial probability that in the foreseeable future the defendant would attain the capacity to permit the trial to proceed.").  Additionally, the statute uses a preponderance standard in other subsections. See 18 U.S.C. § 4241(d)("If . . . the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent . . . the court shall commit the defendant to the custody of the Attorney General."); id. § 4241(e)("If . . . the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge . . . .").  While an argument could be made that substantial probability is its own standard of proof, that phrase appears to be what must be proved and is not the burden of proof.  The argument could also be made that, because Congress used "presumption of the evidence" twice, but not in connection with the substantial probability language, Congress did not intend for the burden of proof to be by a preponderance of the evidence; however, Congress knew how to impose a higher burden of evidence.  Cf. 18 U.S.C. § 4246(d)(requiring clear and convincing evidence of a defendant's dangerousness).  Because it appears to the Court that the most reasonable reading of the language of the statute is that Congress intended preponderance of the evidence to be the standard for all determinations under section 4241, the Court applies a preponderance standard to 18 U.S.C. § 4241(d)(2)(A).  Moreover, the United States did not prove a substantial probability by any standard -- clear-and-convincing, beyond a reasonable doubt, or substantial probability.

-12-

long additional treatment might take. See id. 6:22-7:8, 14:2-5 (Pietz, Converse). She acknowledges that, the longer a person has presented psychotic symptoms, the less likely that person is to respond to medication, see id. 14:13-25 (Pietz, Converse), and Rodriguez-Lopez has presented delusional thought patterns in letters dating back to 2006, see id. at 15:1-6 (Pietz, Converse). To the extent that there are differences or tension between Dr. Pietz' and Dr. Sarrazin's opinions, the Court credits Dr. Pietz' candid concessions over Dr. Sarrazin's more optimistic opinions. After carefully listening to their testimony and questioning them both, the Court concludes that Dr. Pietz' opinion appears more grounded in the BOP's experience with Rodriguez-Lopez, whereas Dr. Sarrazin's testimony appears to be a more speculative and wishful prognosis. In sum, the Court is not convinced, by a preponderance of the evidence, that there is a substantial probability that Rodriguez-Lopez can be returned or treated to competency.

The Court also concludes that, even if there is a substantial probability that Rodriguez-Lopez can be treated to competency, such treatment cannot be done in a legally reasonable time. Dr. Sarrazin states that it usually takes eight months to treat a patient to competency, which he asserts would mean another four months of treatment for Rodriguez-Lopez. Dr. Sarrazin asserts that, at the time of the June 22, 2010 Treatment Summary, he would have requested to treat Rodriguez-Lopez for an additional three-to-four months. See Tr. at 29:16-30:2 (Court, Sarrazin). Rodriguez-Lopez stayed at the FMC for an additional period of two-and-one-half months after June 22, 2010. Thus, Rodriguez-Lopez remained in treatment at the FMC for an additional reasonable period of time beyond the 120 days the Court ordered. Despite being treated for approximately six-and-one-half months, his treatment produced little or no effect. Dr. Sarrazin agrees that Rodriguez-Lopez has not responded to medication despite being at the maximum dosage, and acknowledges that some individuals with severe schizophrenia or other psychotic disorders do not respond to treatment.

While Dr. Sarrazin proposes changing Rodriguez-Lopez' medication, he does not provide any reason specific to Rodriguez-Lopez to suggest that there is a substantial probability that changing Rodriguez-Lopez' medication will succeed in restoring him to competency.

Dr. Sarrazin may be right that Rodriguez-Lopez can be treated to competency in what would be considered a reasonable time in the medical community, but the Court must determine if Rodriguez-Lopez can be treated to competency in a time period that is reasonable under the parameters that Congress established under 18 U.S.C. § 4241.  Section 4241 provides insight into the measure of a reasonable "additional period of time" by establishing that an initial reasonable period is "not to exceed four months."  18 U.S.C. § 4241(d)(1), (d)(2).  The statute appears to contemplate one four-month term followed by another four-month term.  While the standards of the medical community may differ with those of reasonable restraint in the criminal justice system, the Court does not believe that Rodriguez-Lopez can be restored to competency in an additional legally reasonable period of time under the statutory standards, whether that period has already passed or whether it would pass in a few more months.  It appears indisputable that Rodriguez-Lopez could not have been treated to competency in eight months -- one four-month period of maximum reasonable time plus an extension of another four-months of reasonable time.  Even assuming -- and the Court does not -- that Rodriguez-Lopez can be treated to competency, the Court does not believe he can be so treated in a legally reasonable period of time.

The nation's interest in protecting the individual's right to be free from restraint demands that the Court be careful not to extend for too long a defendant's detention for treatment.  Congress' words and the reasonable inferences from those words must be taken seriously in these difficult situations.  Because the Court believes that the BOP has had an additional reasonable period of time to treat Rodriguez-Lopez, and because the United States has failed to show that there is a substantial

-14-

probability that he will become competent in a reasonable period of time, the Court will deny the United States' request to return Rodriguez-Lopez to the FMC for further treatment.

**IT IS ORDERED** that the Plaintiff United States of America's request in the Letter from Marty C. Anderson, Warden, United States Medical Center Federal Prison Springfield to the Court (dated June 30, 2010), filed July 14, 2010 (Doc. 84), to return Defendant Eduardo Rodriguez-Lopez to the Federal Medical Center in Springfield, Illinois, for further treatment to restore him to competency is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Mary Catherine McCulloch
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Kari Converse
  Assistant Federal Public Defender
Albuquerque, New Mexico

      *Attorney for the Defendant*